**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

Dr. Mohammad B. Azab,
Plaintiff,

v. Civil Action No. _____

ANSYS, Inc., and, to the extent applicable,
Synopsys, Inc. as successor-in-interest,
Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Dr. Mohammad B. Azab, proceeding pro se, alleges as follows:

**I. NATURE OF THE ACTION**

1. This is an action for retaliation, retaliatory hostile work environment, and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq.

2. Plaintiff also brings related New Hampshire claims for discrimination, retaliation, and hostile work environment under RSA 354-A; whistle-blower retaliation under RSA 275-E; and personnel-file relief and related equitable relief under RSA 275:56.

3. Plaintiff was a highly successful research and development engineer employed by ANSYS in Lebanon, New Hampshire. Defendant's own records praised his innovation, solver-development contributions, and technical leadership. (Ex. 3.)

4. After Plaintiff opposed discrimination, racist and national-origin-based hostility, authorship misappropriation, national-origin favoritism, harassment, and obstruction of his code contributions, Defendant reduced his compensation, stripped him of managerial authority, diverted work credit, removed his name from authorship, reassigned his trainees and responsibilities to the same favored employee, redirected his goals from Numerics work toward Adjoint work, and subjected him to a retaliatory and hostile work environment that culminated in constructive discharge. (Exs. 1, 4.1, 4.2, 5, 6, 7, 11, 12, 13, 14, A1.)

1

5. In 2025, when Plaintiff sought his personnel file under New Hampshire law, Defendant omitted Plaintiff's 2021 complaint and investigation materials, denied or obscured the existence of key records, denied the existence of team-assignment, managerial-role, or transfer records, and later, when the matter was escalated to the New Hampshire Department of Labor, admitted that an internal review had in fact occurred while withholding it under a claim of privilege. (Exs. 8, 9, A1.) The omitted materials concerned Plaintiff's protected complaints to management, HR, and Legal, and the resulting internal review process. (Exs. 6, 7, 8, 9, 12, 14, A1.)

6. These 2025 acts were not random record-keeping issues. They targeted the documentary trail of Plaintiff's protected activity itself, including his formal complaints to management, HR, and Legal, as well as the resulting retaliatory actions, and therefore constituted fresh post-employment retaliation and concealment tied to the same protected complaints that had already triggered retaliation during Plaintiff's employment. Under Robinson v. Shell Oil Co., 519 U.S. 337 (1997), Title VII reaches retaliatory post-employment actions against former employees, and under Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the anti-retaliation provision reaches employer conduct that would dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff alleges exactly that form of retaliatory concealment here. (Exs. 6, 7, 8, 9, 12, 14, A1.)

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. section 1331 and 42 U.S.C. section 2000e-5(f)(3).

8. This Court has supplemental jurisdiction over Plaintiff's New Hampshire claims under 28 U.S.C. section 1367 because those claims arise from the same nucleus of operative fact as the federal claims.

9. Venue is proper in this District under 28 U.S.C. section 1391 and 42 U.S.C. section 2000e-5(f)(3) because the unlawful employment practices occurred in Lebanon, New Hampshire, Plaintiff worked for Defendant in this District, relevant records were maintained here, and the 2025 personnel-file dispute concerned records maintained or controlled from this District.

## III. PARTIES

10. Plaintiff Dr. Mohammad B. Azab is an individual and former employee of ANSYS who worked in Lebanon, New Hampshire.

11. Defendant ANSYS, Inc. was at all relevant times Plaintiff's employer within the meaning of Title VII and the relevant New Hampshire statutes.

12. Upon information and belief, Synopsys, Inc. has acquired or succeeded to relevant interests, liabilities, obligations, and/or records of ANSYS, Inc. to the extent applicable. Synopsys is named in the alternative as successor-in-interest, subject to amendment as discovery confirms the proper present corporate party.

## IV. EXHAUSTION, TIMELINESS, AND NHCHR FILING HISTORY

13. Plaintiff filed **EEOC Charge No. 523-2026-00777 on December 6, 2025.**

14. The EEOC later confirmed that Plaintiff's charge was timely because Plaintiff learned of the adverse action in October 2025 and filed the charge in December 2025.

15. The EEOC Detroit Field Office assumed handling of the charge at Plaintiff's request because it was geographically closer to Plaintiff's Michigan residence.

16. The EEOC issued Plaintiff's Determination and Notice of Rights on March 26, 2026. Plaintiff therefore brings the federal Title VII claims upon exhaustion through the EEOC process. (Ex. 18.)

3

17. The EEOC further advised Plaintiff that, only days before issuing the Notice of Right to Sue, the Detroit Field Office sent the dual-filing notice to the Michigan Department of Civil Rights rather than to the New Hampshire Commission for Human Rights. (Ex. 18.)

18. On March 25, 2026, Plaintiff confirmed directly with NHCHR that NHCHR had no charge, referral, or notice relative to EEOC Charge No. 523-2026-00777, and that no notice or information had been provided to NHCHR. (Exs. 15, 16.)

19. On March 27, 2026, Plaintiff directly filed with NHCHR to preserve his New Hampshire statutory rights, expressly requesting that NHCHR open a formal employment discrimination charge / verified complaint based on the October 7, 2025 retaliatory concealment event, and attaching his completed NHCHR Charge Information Form and Chronological Statement of Facts. (Ex. 15.)

20. Plaintiff's direct NHCHR filing expressly stated that it was submitted within 180 days of the October 7, 2025 event and was being filed directly because NHCHR had received no EEOC dual-filed referral from the Detroit Field Office. (Ex. 15.)

21. Plaintiff's NHCHR filing materials expressly identified Race, National Origin, and Retaliation, and his Chronological Statement of Facts identified Plaintiff as Arab / Egyptian and Muslim, described a racist and national-origin-based remark by Boris Makarov, an ANSYS manager, and described the October 2025 concealment of Plaintiff's 2021 complaint and investigation records. (Exs. 15, 16.)

22. On April 6, 2026, NHCHR expressly confirmed that it was not accepting or docketing Plaintiff's new charge. NHCHR stated that it did not regard Plaintiff's October 2025 theory as an actionable retaliation claim within its jurisdictional framework and treated Plaintiff's 2021 separation date as the last day of discrimination. (Ex. 16.)

23. On April 9, 2026, after Plaintiff requested supervisory review, NHCHR reaffirmed its decision to decline docketing. It stated that it would measure the 180-day filing period from Plaintiff's constructive discharge rather than from the October 2025 retaliatory concealment event, and further stated that it could not open a duplicate charge because the EEOC had already issued a Notice of Right to Sue. (Ex. 17.)

24. Plaintiff also pleads the related RSA 354-A claim in the alternative and invokes equitable tolling, equitable preservation, agency-error tolling, and related equitable doctrines to the extent Defendants contend that NHCHR filing or timeliness was affected by agency misrouting, the absence of EEOC transmission to NHCHR, or NHCHR's refusal to docket Plaintiff's direct 2025-based filing. Plaintiff acted diligently by filing with the EEOC, confirming that NHCHR had received no referral, and then directly filing with NHCHR within 180 days of the October 7, 2025 retaliatory concealment event. (Exs. 15, 16, 17, 18.) Under Graham-Humphreys v. Memphis Brooks Museum of Art, 209 F.3d 552 (6th Cir. 2000), equitable tolling applies where a claimant's failure to meet a filing deadline arose from circumstances beyond the claimant's control despite diligence, and under Portsmouth Country Club v. Town of Greenland, 152 N.H. 617 (2005), equitable tolling likewise applies where a claimant was prevented in some extraordinary way from exercising his rights or was actively misled concerning the cause of action. Those principles apply here because Plaintiff timely invoked the EEOC process, later learned that the Detroit Field Office had routed the matter to the wrong state agency, confirmed that NHCHR had no referral, and then directly filed with NHCHR within the 180-day filing window, only to have NHCHR refuse to docket the charge based on its contrary view of the operative date and jurisdictional posture, as well as on the ground that the EEOC had already issued a Notice of Right to Sue. (Exs. 15, 16, 17, 18.)

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's high-level technical work and strong performance

25. Plaintiff began working for ANSYS in October 2011 as a Software Developer II on the Fluent Numerics Team in Lebanon, New Hampshire. Through approximately seven years of strong performance, technical achievements, and increasing responsibility, Plaintiff was promoted twice and ultimately became a Lead Research and Development Engineer. (Ex. A1.)

26. Plaintiff's responsibilities included advanced solver development, numerics research, code implementation, product robustness work, and mentoring junior engineers. (Exs. 3, A1.)

27. Plaintiff consistently received strong performance reviews, including repeated "Exceeds Expectations" ratings. (Ex. 3.)

28. Plaintiff's documented work included overset solver development, overset turbulence and DBNS/PBNS development, solver-robustness and performance enhancements, relative-velocity formulation work, and other technical contributions critical to ANSYS Fluent's products and customers. (Ex. 3.)

29. By 2020, Plaintiff was mentoring junior engineers including Mohammad Al-Hawwary and Rajib Roy and was responsible for major PBNS-related improvements, including dual time stepping, continuity-related work, SIMPLEC-related enhancements, and second-order pressure correction work. (Exs. 7, 11.)

### B. 2017-2018 authorship misappropriation and initial opposition

30. In December 2017, Plaintiff reported to management that important overset DBNS solver work he had developed was being mischaracterized or misattributed. (Exs. 1, 7, A1.)

6

31. In January 2018, an AIAA paper based on overset DBNS work was published without Plaintiff's name and instead credited others, including Srinivas Ramakrishnan. (Exs. 2.1, 7, A1.)

32. Plaintiff objected to that omission. A correction page was later issued, but the publicly available original paper continued to omit his name in the main publication record. (Exs. 2.2, 6, 7, A1.)

33. After Plaintiff complained, he was removed from the overset project, depriving him of recognition and advancement tied to work he had materially developed. (Exs. 6, 7, A1.)

## C. Ongoing obstruction, racist hostility, and national-origin favoritism

34. From 2019 through 2021, Plaintiff continued high-level solver development but increasingly faced obstruction and hostility.

35. Plaintiff complained internally that Boris Makarov repeatedly blocked his code contributions, excluded him from technical discussions, belittled his work, **subjected him to verbal insults, and created a hostile environment.** (Exs. 4.1, 6, 7, A1.)

36. During this period, Boris Makarov also made a racist and national-origin-based remark to Plaintiff during a technical argument, stating, **"where did you come from, I did not come from bullshit country."**

37. On January 6, 2021, Plaintiff lodged a specific complaint regarding harassment and obstruction, sent to his direct manager, Thomas Gessner, by time-stamped email. (Exs. 4.1, A1.)

38. After that complaint, Plaintiff reported Boris Makarov's racist remark to Thomas Gessner during a discussion concerning the January 6 complaint.

39. Because Plaintiff had already reported "verbal insults" in writing on August 30, 2021, as reflected in Exhibit 6, and because HR and Legal asked Plaintiff questions during the September 8, 2021 interview, Plaintiff conveyed in response the racist and national-origin-based remark made by Boris Makarov. (Exs. 6, 12.)

40. Management failed to correct the conduct.

41. Plaintiff also observed and reported what he believed was a pattern of national-origin favoritism benefiting Srinivas Ramakrishnan, including the redistribution of work credit and strategic role positioning at Plaintiff's expense. Plaintiff further alleged that this pattern was directed by Senior Director Prasad Alavilli, who exercised authority over the Numerics Team and repeatedly positioned Srinivas for advancement while diverting Plaintiff's credit, responsibilities, and opportunities. (Exs. 6, 7, A1.)

### D. Retaliatory reduction in compensation

42. In March 2021, shortly after Plaintiff's January 2021 complaint, Plaintiff learned that his 2021 bonus, RSU award, and overall compensation had been reduced compared with 2020, including a reduction in RSUs from 125 to 77 shares. (Exs. 4.2, 5, A1.)

43. Plaintiff alleges that similarly situated peers did not suffer comparable reductions and that the timing and selectivity of the reduction were retaliatory. (Ex. A1.)

### E. Role stripping, reassignment, and credit diversion

44. Plaintiff had supervised or mentored Mohammad Al-Hawwary and Rajib Roy. (Exs. 7, 11.)

45. Plaintiff trained Al-Hawwary using Plaintiff's own DTS code and materials, and an April 13, 2021 presentation properly listed both Plaintiff and Al-Hawwary as authors. (Exs. 7, 11.)

46. Plaintiff developed the underlying stair-stepping / PBNS improvement package and related continuity and dual-time-stepping work later associated with Al-Hawwary and Rajib Roy. (Ex. 7.)

47. In or about May 2021, following Plaintiff's January 2021 complaint regarding Boris Makarov, Plaintiff's managerial responsibilities over Al-Hawwary and Rajib Roy were removed. (Exs. 7, 11, A1.)

48. Those responsibilities were transferred into the reporting line of Srinivas Ramakrishnan, the same favored employee whom Plaintiff had already identified as benefiting from disputed authorship, national-origin favoritism, and credit-allocation practices. (Exs. 6, 7, 11, A1.)

49. Plaintiff was also asked whether he wanted to be removed to another team rather than having Defendant address the underlying misconduct and hostility that he had reported. Plaintiff was thereafter reassigned from the Numerics Team to the Adjoint Team. (Ex. 7.)

50. Plaintiff's previously blocked work was later copied, repackaged, merged, or credited under the names of others, including Rajib Roy and Al-Hawwary, in technical areas Plaintiff had defined. (Ex. 7.)

51. Plaintiff further complained that presentations based on his own DTS work had removed Plaintiff's name while preserving or adding Srinivas Ramakrishnan as an author, despite Srinivas not contributing to the underlying content. (Exs. 6, 7, 11.)

52. In August 2021, Defendant proposed revising Plaintiff's 2021 goals to reflect or reinforce that reassignment by shifting them away from general Numerics work and toward the adjoint solver, while also removing Plaintiff's supervision goal. Plaintiff objected and insisted that his Numerics work, managerial work over Al-Hawwary and Rajib Roy, and blocked work by Boris Makarov remain reflected in his review. (Ex. 13.)

53. In 2025, Plaintiff requested personnel records reflecting his managerial role, his tenure with the Numerics Team, and his subsequent transfer to the Adjoint Team during the final months of his employment, as well as records of his complaint to ANSYS HR and Legal that was the subject of the September 8, 2021 interview. Defendant responded that no record of team assignment or transfer could be found. (Ex. 8.)

54. Plaintiff alleges that the absence of any documented team-assignment or transfer record, combined with the contemporaneous 2021 record showing Defendant was redirecting Plaintiff's

goals toward Adjoint work and the omission of complaint and investigation materials, supports an inference that Defendant concealed a retaliatory reassignment or other retaliatory job changes following Plaintiff's protected complaints. (Ex. 13.)

55. Thus, Plaintiff's responsibilities, trainees, and technical credit were not merely reduced; they were redirected to the same favored employee who had already benefited from disputed authorship and credit practices.

**F. Formal complaint, HR/Legal investigation, and constructive discharge**

56. On August 5, 2021, Plaintiff submitted a formal compliance complaint regarding authorship misappropriation and managerial retaliation. (Ex. 11.)

57. In that complaint, Plaintiff explained that he had developed PBNS dual time stepping in December 2020, trained Al-Hawwary using Plaintiff's own code and test results, and later discovered that the same material was reused in a later presentation after Plaintiff had been stripped of his managerial role, with Srinivas Ramakrishnan added as an author. Plaintiff alleged that these events reflected retaliatory role stripping and national-origin favoritism benefiting the same favored employee. (Ex. 11.)

58. On August 30, 2021, Corporate Counsel Renee Shaffer confirmed that Plaintiff's complaint was under **active investigation with HR involvement** and requested further information about Plaintiff's concerns and the retaliation he had experienced. **(Ex. 6.)**

59. Plaintiff responded that, before Al-Hawwary left ANSYS, Al-Hawwary had removed Plaintiff's name from the authors entirely in the presentation at issue, and Plaintiff tied that incident to a broader pattern of giving Srinivas credit for work he did not do. (Ex. 6.)

60. On September 1, 2021, Renee Shaffer sent a confidential interview invitation scheduling a September 8, 2021 meeting with Plaintiff and Nina DeLeon. (Ex. 14.)

10

61. On September 8, 2021, Plaintiff submitted detailed background material to HR and Legal documenting retaliation, national-origin favoritism, blocked code merges, work-credit diversion, and managerial stripping. (Ex. 7.)

62. Plaintiff also met with Renee Shaffer and Nina DeLeon on September 8, 2021 to discuss those concerns.

63. During that September 8, 2021 meeting, Plaintiff further explained that the national-origin favoritism and reassignment of credit and responsibilities to Srinivas Ramakrishnan were not merely personal favoritism, but reflected national-origin-based favoritism, including favoritism by leadership toward an employee of the same Indian national origin. Plaintiff further identified Senior Director Prasad Alavilli as the leadership official directing that pattern. (Exs. 12, 14.)

64. On September 10, 2021, Renee Shaffer confirmed in writing that Plaintiff had discussed his concerns with her and Nina DeLeon on September 8, 2021, that Plaintiff had answered their questions, and that the information he provided was helpful to ANSYS's review of the matter. (Ex. 12.)

65. In 2025, when Defendant omitted Plaintiff's complaint and investigation materials from the personnel-file production and later admitted that an internal review had occurred while withholding it as privileged, **Defendant concealed records that, upon information and belief, included the contemporaneous memorialization of Plaintiff's protected complaint of national-origin discrimination and retaliation, including questions and answers from the September 8, 2021 interview concerning the verbal insults Plaintiff had already reported in writing, as reflected in Exhibit 6, and Plaintiff's disclosure during that interview of Boris Makarov's racist and national-origin-based remark. (Exs. 6, 9, 12, 14.)**

66. Defendant communicated no meaningful corrective findings or remedial action.

67. Instead, retaliation intensified, Plaintiff was isolated further, and his working conditions became intolerable.

68. Plaintiff resigned effective September 10, 2021 as a constructive discharge. (Exs. 7, 12, A1.)

## G. Medical impact

69. In November 2021, approximately two months after leaving ANSYS, Plaintiff's medical records showed an A1C of 13.0, reflecting severe stress and health deterioration following the constructive discharge. (Ex. 10; Ex. A1.)

## H. 2025 personnel-file omission and post-employment retaliation

70. In July 2025, Plaintiff requested his personnel file pursuant to RSA 275:56. (Ex. 8.)

71. Defendant responded that it had conducted a reasonable and good-faith search and provided the records currently maintained, while asserting that certain missing records either were never maintained as part of Plaintiff's personnel file or were no longer retained, and further stating as to managerial-role and team-assignment/transfer records that "no such record was found." (Ex. 8.)

72. The omitted records included Plaintiff's 2021 complaint to VP John Stokes, HR representative Nina DeLeon, and Legal Counsel Renee Shaffer, as well as records reflecting Plaintiff's managerial role, team assignment, transfer of responsibilities, and requested records concerning Plaintiff's move from the Numerics Team to the Adjoint Team. (Ex. 8.)

73. In October 2025, Plaintiff escalated the matter to the New Hampshire Department of Labor to seek enforcement of the production of omitted records. During the ensuing New Hampshire Department of Labor correspondence, Defendant acknowledged that an internal review of Plaintiff's concerns had in fact occurred, but contended that the review was led by Legal with HR support, was privileged, and was not maintained in the personnel file. (Ex. 9.)

74. **Defendant's 2025 positions were contradictory and retaliatory:** Defendant first omitted or denied material complaint, team-assignment, and role-assignment records, then admitted an internal review had occurred while withholding it.

75. The records omitted or concealed in 2025 were directly tied to Plaintiff's protected activity in 2021. By omitting the record of Plaintiff's formal complaints, the internal investigation into those complaints, and records concerning the resulting changes to Plaintiff's role and team assignment, Defendant concealed the documentary trail of Plaintiff's protected activity itself, including, upon information and belief, records generated from the September 8, 2021 meeting and review process confirmed by Renee Shaffer's September 10, 2021 follow-up email and the September 1, 2021 confidential interview invitation. (Exs. 12, 14.)

76. Plaintiff alleges that these acts constituted fresh retaliation because they impaired his ability to vindicate his rights, obscured the factual record of his protected activity, and continued the same pattern of retaliation that had driven him from employment.

## COUNT I - TITLE VII RETALIATION

77. Plaintiff incorporates the preceding paragraphs and alleges that he engaged in protected activity, suffered materially adverse action, and that a causal connection exists between the two.

78. Plaintiff engaged in protected activity by opposing discrimination and retaliation, including national-origin-based hostility and national-origin favoritism, as well as related authorship misappropriation, harassment, and retaliatory conduct, including through the December 2017 complaint, the January 2021 complaint, Plaintiff's report to Thomas Gessner of Boris Makarov's racist remark, the August 5, 2021 compliance complaint, the August 30, 2021 complaint communications, the September 8, 2021 formal complaint, and the related September 8, 2021 HR/Legal meeting. As reflected in Exhibit A, informal complaints to management constitute

protected activity under Title VII. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). (Ex. A.) (Exs. 1, 4.1, 6, 7, 11, 12.)

79. Defendant knew of Plaintiff's protected activity.

80. Defendant subjected Plaintiff to materially adverse actions during employment, including reduction of bonus, RSU, and total compensation, blocking or rerouting his code contributions, removal of managerial authority, reassignment of Plaintiff's trainees and responsibilities to the same favored employee, diversion of work credit, removal of Plaintiff's name from authorship, exclusion from meetings and technical discussions, redirection of Plaintiff's goals toward Adjoint work while minimizing or omitting his accomplishments in Numerics and his managerial role, and constructive discharge. (Exs. 4.2, 5, 6, 7, 11, 12, 13, 14, A1.)

81. Defendant also subjected Plaintiff to materially adverse post-employment actions in 2025 by omitting from the personnel file his 2021 complaint and investigation materials, along with records of his team change and managerial role, denying or obscuring the existence of those records, and later admitting that the review existed while withholding it and characterizing it as privileged. As reflected in Exhibit A, Title VII's anti-retaliation protection extends to former employees and reaches retaliatory post-employment actions. (Ex. A.) (Exs. 8, 9, 12, 13, 14, A1.)

82. These actions would dissuade a reasonable worker from making or supporting a charge of discrimination or other protected complaint and therefore constitute materially adverse actions within the meaning of Title VII's anti-retaliation protection. As reflected in Exhibit A, the anti-retaliation provision is not confined to actions occurring at the workplace or limited to discriminatory actions affecting formal terms and conditions of employment. (Ex. A.) (Exs. 8, 9, 12, 13, 14, A1.)

83. The 2025 concealment was causally connected to Plaintiff's 2021 protected activity because the very records concealed were the records of that protected activity, the related internal

14

investigation, and the retaliatory consequences that followed, including, upon information and belief, contemporaneous HR/Legal records reflecting Plaintiff's oral complaint of national-origin discrimination, including Boris Makarov's racist remark, during the September 8, 2021 meeting confirmed by Exhibit 12.

84. As a direct and proximate result, Plaintiff suffered loss of compensation, loss of professional standing, emotional distress, reputational harm, medical injury, and other damages.

## COUNT II - TITLE VII RETALIATORY HOSTILE WORK ENVIRONMENT

85. Plaintiff incorporates the preceding paragraphs and alleges that the retaliatory harassment he experienced was sufficiently severe or pervasive to dissuade a reasonable worker from engaging in protected activity.

86. After engaging in protected activity, Plaintiff was subjected to repeated ridicule, belittlement, obstruction, exclusion, denial of credit, undermining of his authority, and pressure designed to marginalize him professionally.

87. The hostile treatment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and was materially connected to his protected complaints. As reflected in Exhibit A, retaliatory harassment and employer tolerance of co-worker retaliation may constitute actionable adverse treatment where the harassment is sufficiently severe or pervasive and the employer negligently fails to discover or remedy it. (Ex. A.) (Exs. 4.1, 6, 7, 11, 12, 13, 14, A1.)

88. Defendant, through management and senior technical personnel, knew of the hostile treatment and failed to correct it.

89. As a result, Plaintiff suffered emotional distress, professional injury, medical injury, and ultimately constructive discharge. (Ex. 10.)

15

## COUNT III - CONSTRUCTIVE DISCHARGE UNDER TITLE VII

90. Plaintiff incorporates the preceding paragraphs.

91. Defendant deliberately or knowingly permitted conditions to become so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

92. Those conditions included repeated obstruction of Plaintiff's work, belittlement, loss of compensation, national-origin favoritism, stripping of management duties, reassignment of trainees and work credit to the same favored employee, exclusion from technical discourse, reassignment from Numerics to Adjoint, verbal insults tied to national origin and reported to HR in Exhibit 6, failure to remedy documented complaints, and retaliation during the active-investigation period.

93. Plaintiff resigned effective September 10, 2021 because continued employment had become intolerable, and Plaintiff's November 2021 medical records later reflected the resulting health deterioration. (Ex. 10.)

## COUNT IV - DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT UNDER RSA 354-A
## (PLEADED IN THE ALTERNATIVE WITH EQUITABLE TOLLING / PRESERVATION)

94. Plaintiff incorporates the preceding paragraphs and alleges his RSA 354-A claims under standards interpreted consistently with federal Title VII law governing discrimination, retaliation, and hostile work environment.

95. Plaintiff alleges that Defendant discriminated against him based on protected class, including race, national origin, religion, and/or ethnicity, and retaliated against him for opposing discrimination and participating in internal complaint and review processes concerning discriminatory treatment. (Exs. 4.1, 6, 7, 11, 12, 14, 15, 16, A1.)

16

96. Plaintiff further alleges that Defendant subjected him to a hostile work environment, discriminatory national-origin favoritism, unequal treatment in compensation and responsibilities, and post-employment retaliatory concealment tied to his complaints of discrimination. (Exs. 4.2, 5, 6, 7, 8, 9, 11, 12, 13, 14, A1.)

97. Under RSA 354-A, New Hampshire courts look to federal discrimination standards for guidance in analyzing burden-shifting, pretext, retaliation, and make-whole relief. See Burns v. Town of Gorham, 122 N.H. 401 (1982); Madeja v. MPB Corp., 149 N.H. 371 (2003). Burns recognizes that a plaintiff may prove discrimination through a flexible prima facie showing and then demonstrate that the employer's stated reason was not the true reason for the challenged employment decision, while Madeja recognizes retaliation, retaliatory harassment, causation, and pretext principles under both Title VII and RSA chapter 354-A. Plaintiff alleges protected activity, adverse action, causation, hostile retaliatory treatment, discriminatory national-origin favoritism, and pretextual or non-credible explanations for the challenged conduct, including the contrast between Defendant's omission of complaint materials in 2025 and its later admission that an internal review in fact existed. (Exs. 4.1, 4.2, 5, 6, 7, 8, 9, 11, 12, 13, 14, A1.)

98. Plaintiff timely pursued administrative relief through the EEOC, but the EEOC routed the dual-filing notice to the Michigan Department of Civil Rights rather than to NHCHR, while NHCHR separately confirmed that it received no charge, referral, or notice concerning Plaintiff's EEOC matter. Plaintiff then attempted a direct NHCHR filing within 180 days of the October 7, 2025 retaliatory concealment event, but NHCHR refused to accept or docket the filing while treating the operative date as Plaintiff's 2021 separation rather than the 2025 event Plaintiff presented. (Exs. 15, 16, 17, 18.) NHCHR's refusal was also contrary to the EEOC's treatment of the October 7, 2025 retaliatory concealment event as an actionable post-employment retaliation event, a view consistent with Robinson v. Shell Oil Co., 519 U.S. 337 (1997). These facts

17

support Plaintiff's alternative plea that any RSA 354-A exhaustion or timeliness issue resulted from agency routing error and agency refusal, not lack of diligence by Plaintiff. (Exs. 15, 16, 17, 18.)

99. To the extent RSA 354-A filing or timeliness is challenged, Plaintiff pleads equitable tolling, equitable preservation, agency-error tolling, and all other applicable equitable doctrines because any NHCHR-filing defect resulted from agency misrouting and agency refusal, not from lack of diligence by Plaintiff. (Exs. 15, 16, 17, 18.) Under Graham-Humphreys, tolling applies where the claimant acted diligently but missed a deadline because of circumstances beyond his control, and under Portsmouth Country Club, tolling applies where a claimant was prevented in an extraordinary way from exercising his rights or was actively misled about the cause of action. Plaintiff's facts and supporting exhibits satisfy those principles because he timely pursued EEOC relief, learned that the dual-filing process had gone to the wrong state agency, verified that NHCHR had no referral, then directly filed within 180 days of the October 7, 2025 event, only to have NHCHR refuse to docket the charge. (Exs. 15, 16, 17, 18.)

100. As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost income, lost equity compensation, loss of advancement, reputational harm, emotional distress, medical injury, and other damages, and seeks all relief available under RSA 354-A. As reflected in Exhibit A, make-whole relief is designed to place victims of unlawful discrimination in the position they would have occupied absent the discrimination. (Ex. A.) (Exs. 4.2, 5, 10, A1.)

## COUNT V - WHISTLE-BLOWER RETALIATION UNDER RSA 275-E

101. Plaintiff incorporates the preceding paragraphs.

18

102. Plaintiff, in good faith, reported to Defendant what he reasonably believed to be unlawful discrimination, retaliation, misappropriation of professional credit, and related misconduct affecting the terms and conditions of employment.

103. Plaintiff made such reports to management, HR, Compliance, and Legal, including in 2017, January 2021, August 2021, and September 2021. (Exs. 1, 4.1, 6, 7, 11, 12, 14.)

104. After these reports, Defendant harassed, intimidated, threatened, and otherwise discriminated against Plaintiff regarding compensation, terms, conditions, and privileges of employment by reducing compensation, obstructing his work, stripping his authority, transferring his trainees and responsibilities, excluding him from work discussions, and forcing his constructive discharge. (Exs. 4.2, 5, 6, 7, 11, A1.)

105. Defendant's later concealment and withholding of complaint-related records in 2025 further aggravated and continued the retaliatory course of conduct.

## COUNT VI - RSA 275:56 PERSONNEL-FILE RELIEF AND RELATED EQUITABLE RELIEF

106. Plaintiff incorporates the preceding paragraphs.

107. RSA 275:56 required Defendant to provide Plaintiff a reasonable opportunity to inspect and obtain a copy of his personnel file.

108. Plaintiff requested the file in July 2025, specifically including records concerning his employment history, managerial role, team assignments, and complaint-related materials. (Ex. 8.)

109. Defendant produced an incomplete file and represented that missing records either were never part of the file or were no longer retained, even though Defendant produced other personnel records dating back to 2011, the beginning of Plaintiff's employment. (Ex. 8.)

19

110. Defendant later admitted, after Plaintiff escalated the matter to the New Hampshire Department of Labor to seek enforcement of production of the missing records, that an internal review of Plaintiff's 2021 concerns had occurred with HR support, while withholding those materials under a claim of privilege. (Ex. 9.)

111. Plaintiff alleges that Defendant failed to provide all records subject to disclosure under RSA 275:56, failed to provide an accurate and complete production responsive to his request, and used the omission of complaint-related records as part of the broader retaliatory course of conduct.

112. Plaintiff seeks all relief available under RSA 275:56, including declaratory and equitable relief, production of any non-privileged personnel-file materials, and all other relief available under New Hampshire law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor on all Counts;

B. Declare that Defendant violated Title VII, RSA 354-A, RSA 275-E, and RSA 275:56;

C. Award back pay, front pay, lost benefits, lost equity compensation, and all other economic damages proven at trial;

D. Award compensatory damages for emotional distress, reputational harm, medical injury, and other non-economic harm;

E. Award enhanced compensatory damages and all other relief available under RSA 354-A to the extent permitted by law;

F. Award punitive damages to the extent permitted by Title VII and any other applicable law;

20

G. Award equitable and injunctive relief, including such record-related and employment-related relief as the Court deems just;

H. Award costs, statutory attorney's fees if later represented, pre-judgment interest, post-judgment interest, and such further relief as justice requires.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*Mohammad Azab*

/s/ Mohammad B. Azab
Dr. Mohammad B. Azab (Ph.D.)
635 Snowmass Drive
Rochester Hills, MI 48309
603-377-0901
mbazab@yahoo.com

Date: May 11, 2026

## CERTIFICATE OF SERVICE

I, Bouchra Errokhssi, hereby certify that on the date below, I served a true and correct copy of the Complaint and Demand for Jury Trial, together with the summons and twenty-two (22) exhibits, by placing them in sealed envelopes for delivery via UPS Second Day Air, with proof of delivery and signature confirmation, to the registered/resident agents for the following defendants:

ANSYS, INC.

c/o UNITED AGENT GROUP INC.

28175 HAGGERTY ROAD

NOVI, MI 48377

Synopsys, Inc.

c/o The Corporation Trust Company

1209 Orange Street

Wilmington, DE 19801

I further certify that:

• I am over 18 years of age,

• I am not a party to this action, and

• I am competent to serve documents under Fed. R. Civ. P. 4 and 5.

Date: _____

/s/ Bouchra Errokhssi

Bouchra Errokhssi

635 Snowmass Drive

Rochester Hills, MI 48309

21